**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin Moshir, | No. CV 11-1611-PHX-JAT |
| Plaintiff, | **ORDER RE: PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES; PLAINTIFF'S MOTION TO STRIKE; PLAINTIFF'S OBJECTIONS TO ADMISSION OF EVIDENCE** |
| vs. | |
| Automobili Lamborghini America LLC, | |
| Defendant. | |

Currently pending before the Court are Plaintiff Kevin Moshir's Motion for Attorneys' Fees, Costs, and Expenses (Doc. 40), Motion to Strike (Doc. 47) Defendant Automobili Lamborghini America LLC's Amended Response to Plaintiff's Motion for Attorneys' Fees and Expenses (Doc. 46), and Objections to Admission of Evidence (Doc. 47) proffered in Defendant's Response (Doc. 45). The Court now rules on these motions.

## I.   BACKGROUND

Plaintiff Kevin Moshir ("Moshir") brought this Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, suit on August 17, 2011. Moshir claimed that he purchased a defective 2008 Lamborghini Gallardo Spyder from Defendant Automobili Lamborghini America LLC ("Lamborghini") on February 21, 2009, that Lamborghini provided a written warranty for the vehicle, and that Lamborghini's failure to cure the vehicle's defects breached the written warranty in violation of the MMWA and caused a diminution in the value of the vehicle.

Moshir originally hired attorney Luis Ramirez of the firm of Pryor, Ramirez & Amar, LLC to represent him in this matter. Attorney Ramirez and his firm completed substantial pre-trial work on behalf of Moshir, including preparing and filing the Complaint (Doc. 1) and Amended Complaint (Doc. 6), creating the case management plan (Doc. 10), attending the Rule 26(f) Planning Meeting (*id.*) and Rule 16 Scheduling Conference (Doc. 11), making initial Rule 26 Disclosures (Doc. 17), and participating in settlement discussions with Lamborghini (Doc. 45, Exhibit 1, Email Excerpts of Settlement Negotiations, at 1-2). On October 17, 2011, attorney Ramirez communicated a settlement offer of $85,000 "cash-and-keep" to Lamborghini and Lamborghini responded with a counteroffer for $15,000 (*id.*).

Moshir fired attorney Ramirez and his firm on December 20, 2012 with the intent that Moshir's "in-house" counsel assume representation in this matter (Doc. 14). "Primarily employed as the General Counsel for CellTrust Corporation" (Doc. 40, Affidavit of Attorney Rebecca Ruegg, at 2)—a company where Moshir is both the President and a co-owner (Doc. 45, Exhibit E, Deposition of Kevin Moshir, at 24-25)—attorney Rebecca Ruegg entered a Notice of Appearance on behalf of Moshir on January 11, 2012 (Doc. 16). Lacking experience in civil litigation and believing that hiring experienced co-counsel "was necessary in this action to comport with Arizona Rules of Professional Conduct Rule ER 1.1" (Doc. 44, Exhibit A, Statement of Attorney Rebecca Ruegg Certifying Personal Consultation, at 2), Moshir and Attorney Ruegg hired attorney Brian Foster of the firm of Snell & Wilmer, LLP "to offer advice and guidance to Attorney Ruegg" (Doc. 40, Affidavit of Attorney Rebecca Ruegg, at 4).

Attorney Ruegg represented Moshir throughout the remainder of the pre-trial process, including continued settlement negotiations, procurement of an expert, and a failed mediation. On January 30, 2012, Moshir rejected Lamborghini's $15,000 counteroffer and reiterated his demand for $85,000 cash-and-keep. At this time, Lamborghini's counsel explained that it was unlikely to ever make an offer greater than $50,000. Attorney Ruegg, on behalf of Moshir, responded by claiming that it would be quite unlikely for Moshir to ever accept an offer below $50,000 (Doc. 45, Exhibit 1, Email Excerpts of Settlement

Negotiations, at 1-2). On March 27, 2012, Lamborghini communicated a $20,000 cash-and-keep settlement offer which Moshir promptly declined without counteroffer (*id.* at 3).

On April 4, 2012, Moshir hired an expert to examine his 2008 Lamborghini Gallardo Spyder for mechanical defects and prepare a report on the vehicle's diminution of value; the expert submitted the report on April 26, 2012 (Doc. 45, Exhibit B, Diminution of Value / Inspection Report, at 88, 92). Of particular note is that Moshir''s expert report does not proffer an opinion as to the dollar amount of any diminution of value, despite finding the brake squeal to be greater than usual for a high-performance, premium, sports car (*id.* at 88-93). Although Moshir's expert opined that the vehicle's brake squeal could deter potential buyers (*id.* at 91), he characterized "a severely diminished resale value" as being "due to pages of problematic and unresolved service records," not a mechanical defect (*id.* at 92). Moshir appears to have disclosed this expert report to Lamborghini on April 27, 2012 (*see* Doc. 33).[1]

On May 17, 2012, both parties attended private mediation, ostensibly in an attempt to settle the dispute (Doc. 45, Exhibit A, Affidavit of Michael B. Brewer, at 2; Doc. 44, Exhibit C(1), at 6). Although Moshir's own expert's report did not ascribe a dollar value to the vehicle's diminution of value, Moshir's final demand at mediation was $135,000 (Doc. 45, Exhibit A, Affidavit of Michael B. Brewer, at 2)—$50,000 more than the $85,000 he had been demanding since the beginning of the dispute and before receiving his expert's report. Lamborghini, however, increased its offer for settlement to $35,000 (*id.*). It is unclear if Lamborghini's offer would have included a provision for the recovery of attorneys' fees, expenses, and costs; Moshir claims that it would not have, but has not alleged that accepting the offer would have required waiver of a MMWA § 2310(d)(2) claim for attorneys' fees, costs, and expenses (Doc. 47, at 3).

---

[1] The Rule 16 Scheduling Order originally set February 27 as the deadline for Moshir to disclose the identity of any expert he may use (Doc. 21, at 2). Moshir, however, made two separate motions to extend the expert disclosure deadline to March 27 and April 27, respectively (Docs. 24, 27). Because Lamborghini agreed to stipulate to both extensions, this Court granted them.

On June 6, 2012, Lamborghini served Moshir with a Rule 68 Offer of Judgment (Doc. 37) for damages of $35,000 under Count 1 of the Complaint (a breach of the MMWA), an award of "cost[s] and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred pursuant to 15 U.S.C. § 2310," and judgment in favor of Lamborghini on Count 2 of the Complaint (the alleged Arizona Lemon Law violation) (Doc. 39, Exhibit A, Defendant's Offer of Judgment, at 1). On June 19, 2012, Moshir accepted the Offer of Judgment (Doc. 39).

Claiming entitlement to expenses and costs under 15 U.S.C. § 2310, Moshir now moves the Court to award reasonable attorneys' fees, expenses, and costs. Accompanying the motion is an additional motion to strike Lamborghini's Amended Response to Moshir's motion (Doc. 46) and objections to admission of evidence proffered by Lamborghini's Response. The Court now rules on these motions.

## II.    ANALYSIS

### A.    Motion to Strike

In his reply to Lamborghini's response, Moshir moves to strike Lamborghini's Amended Response to Moshir's Motion for Attorneys' Fees (Doc. 46) under LRCiv 7.2(m)(1), claiming that Lamborghini's Amended Response was not authorized by a statute, rule, or court order (Doc. 47, p.1). Lamborghini's original Response (Doc. 45) to Moshir's Motion for Attorneys' Fees (Doc. 40) was filed on August 31, 2012, fourteen days after August 17, 2012, the day Moshir filed his Memorandum of Points and Authorities (Doc. 44). Lamborghini filed its Amended  Response, however, on September 4, 2012, outside of the time limit authorized by LRCiv 7.2(c). Lamborghini did not ask for and the Court did not enter an order authorizing Lamborghini's amendment. Additionally, Lamborghini has not responded to Moshir's motion strike.

A red-line examination of the amended response reveals that the amended response contains no new substantive arguments, but rather corrects citations, edits language choices and arguments for clarity, and otherwise appears to be a more final version of Lamborghini's Response. The Court will not countenance submission of an early draft to meet filing

deadlines with the intent of amending the unfinished filing to a "final" version after the filing deadline has run. Lamborghini's Amended Response may not have been made with ulterior motives in this instance, but nonetheless, the Amended Response does not comport with LRCiv 7.2. Moshir's motion to strike Lamborghini's Amended Response (Doc. 46) is therefore granted.

### B.      Objections to Admission of Evidence

Pursuant to LRCiv Rule 7.1(m)(2), in his Reply to Lamborghini's Response, Moshir makes three evidentiary objections to the content of Lamborghini's Response based on Federal Rules of Evidence ("FRE") Rule 401, 408, and 601. For the following reasons, the Court overrules each objection.

### 1.      FRE Rule 408

First, Moshir argues that Lamborghini's "inclusion of evidence of conduct and statements made during compromise negotiations" is "inadmissible under [FRE] Rule 408 and should not be considered by the court" (Doc. 47, at 2). Rule 408 requires the exclusion of evidence of "compromise negotiations" or other settlement negotiations only when offered as evidence of the "validity," "invalidity," or "amount" of the disputed claim. FRE 408(a)(2). Here, however, Lamborghini offers evidence of settlement negotiations not to attack the underlying validity or amount of the claim, but solely for its relevance in determining the reasonableness of Moshir's claim for attorneys' fees.

In *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011), the district court found that plaintiffs "took unreasonable settlement positions and prolonged the litigation." Noting that plaintiffs had initially demanded $425,000 and later settled for a total of $32,000, "an offer which had been rejected by [plaintiffs] one month before settling for that amount," the district court used this evidence from settlement negotiations to reduce the attorneys' fees award. *Id*. Having not previously addressed the issue, the Ninth Circuit found that "other circuits have held that settlement negotiations may be considered by the district court as a factor in determining a fee award." *Id*. (citing *Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3d Cir. 2009), *cert. denied*, 130 S.Ct. 3330 (2010); *Parke v. First Reliance Standard Life*

*Ins. Co.*, 368 F.3d 999, 1012 (8th Cir. 2004); *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000)). Specifically agreeing with the Third Circuit's reasoning in *Lohman* ("Rule 408 does not bar a court's consideration of settlement negotiations in its analysis of what constitutes a reasonable fee award," 574 F.3d at 167), the Ninth Circuit held that the district court may "consider[] settlement negotiations for the purpose of deciding a reasonable attorney fee award." *Ingram*, 647 F.3d at 927.

In light of *Ingram*—binding precedent on this Court—the Court overrules Moshir's objections to Lamborghini's proffer of evidence from settlement negotiations and will use the Court's discretion to give the evidence the weight it deserves when considering Moshir's motion for attorneys' fees.

### 2.    FRE Rules 401 and 601

Second, Moshir objects to Lamborghini's "inclusion of statements and conclusions regarding the ultimate outcome of the case based on facts that may or may not have been submitted at a trial that did not occur as irrelevant under FRE Rule 401 and speculative under FRE Rule 602" (Doc. 47, at 2). Moshir makes this objection generally and offers no specific details or examples of irrelevant facts or speculative conclusions submitted by Lamborghini. Instead, Moshir simply argues that "much of the evidence presented by [Lamborghini] is irrelevant" because the "purpose of the current motion is to determine the reasonableness" of the attorneys' fees. Equally without specificity, Moshir alleges that Lamborghini's presentation of evidence in its response is "frequently inaccurate and incomplete," and therefore "any conclusions based upon such evidence would require speculation" (Doc. 47, at 2).

Because Moshir has not identified any specific evidence to which he objects, the Court finds the objections overly broad and lacking sufficient clarity to enable the Court to apply FRE Rules 401 and 602. Consequently, the Court overrules Moshir's objections to the admission of evidence and will use the Court's discretion to give the evidence the weight it deserves when considering Moshir's motion for attorneys' fees.

### C.    Attorneys' Fees under the MMWA, 15 U.S.C. § 2310

Under the MMWA, a prevailing plaintiff "may be allowed by the court to recover . . . a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been *reasonably* incurred by the plaintiff for or in connection with the commencement and prosecution of such action." 15 U.S.C. § 2310(d)(2) (emphasis added). Pursuant to this provision and in accordance with the accepted Offer of Judgment (Doc. 39, Exhibit A), Moshir has moved for attorneys' fees, costs, and expenses in the aggregate amount of $55,047.90 (Doc. 44, at 11). Lamborghini, in its Response, argues that Moshir's motion should be denied in its entirety and, if not, that several discrete portions of Moshir's claimed fees should be denied or reduced as being unreasonable (Doc. 45). For the following reasons, the Court awards Moshir a total of $22,031.40 in attorneys' fees, costs, and expenses.

### 1.    Appropriateness of Awarding Attorneys' Fees, Costs, and Expenses

Lamborghini first argues that an award of attorneys' fees is inappropriate because the Offer of Judgment accepted was a fraction of Moshir's original demand (thereby demonstrating limited success in his claims) and the fee request is "grossly disproportionate to [Moshir's] recovery" (Doc. 45, at 1-9). The MMWA does, indeed, allow "the court in its discretion [to] determine that such an award of attorneys' fees would be inappropriate." § 2310(d)(2). In this case, however, Lamborghini, in its Offer of Judgment (which Moshir accepted), specifically offered to award Moshir "a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been *reasonably* incurred pursuant to 15 U.S.C.A. § 2310" (Doc. 39, Exhibit A, at 1) (emphasis added). Consequently, the Court will not find an award of reasonable attorneys' fees inappropriate in this case. Instead, the Court will examine Moshir's Motion for Attorneys' Fees, Costs, and Expenses for reasonableness with particular attention to the discrete portions challenged by Lamborghini.

### 2.    Reasonableness of Moshir's Claimed Attorneys' Fees

The "case law construing what is a 'reasonable' fee applies uniformly" to all federal

fee-shifting statutes. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). In determining a reasonable attorney's fee, the Court must begin with the "lodestar" figure which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There is a "strong presumption" that the lodestar is the reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). When deciding the reasonable number of hours expended and the reasonableness of the hourly rate, a court may consider: "(1) the novelty and complexity of the issues[;] (2) the special skill and experience of counsel[;] (3) the quality of representation[;] and (4) the results obtained." *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir.1988), *vacated*, 490 U.S. 1087 (1989), *reinstated*, 886 F.2d 235 (9th Cir. 1989). Additionally, "[i]n determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended. Those hours may be reduced by the Court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; [or] if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir.1986), *reh'g denied*, *amended on other grounds*, 808 F.2d 1373 (9th Cir.1987) (internal citations omitted). The court will adhere to these factors in its analysis of the reasonableness of each discrete portion of Moshir's Motion for Attorneys' Fees, Costs, and Expenses.

### a.   Attorneys' Fees, Expenses, and Costs of Pryor, Ramirez & Amar, LLC

Moshir seeks a total of $5,500 on behalf of his initial attorneys, Luis Ramirez and Shalev Amar: $5,096.80 in attorneys' fees, a $350 complaint filing fee, and $53.20 in total service fees (Doc. 44, at 12). Attorneys Ramirez and Amar performed 20.7 hours of work between August 2011 and December 9, 2011, including filing the initial and amended complaint, handling the Rule 16 scheduling conference, drafting the proposed case management plan and initial Rule 26 Disclosure Statement, and conducting settlement negotiations with Lamborghini (Doc. 40, Exhibit A(2); Doc. 44, at 5-6). Because Lamborghini "has no qualm with the time-and-task entries or the billing rate of Pryor,

Ramirez & Amar, LLC" (Doc. 45, at 16), the Court will not delve deeper into a reasonableness analysis.

The lodestar calculation of 20.7 hours multiplied by $300 per hour yields total attorneys' fees of $6,210. In addition, Pryor, Ramirez & Amar, LLC paid a total of $403.20 in filing and service costs, yielding a grand total of $6,613.20 (Doc. 40, Exhibit A(1)). Pryor, Ramirez & Amar, LLC, however, agreed to accept a total of $5,500 as "payment in full" to "resolve all outstanding interests involving the [f]irm," and Moshir has already transmitted payment to the firm (Doc. 40, Exhibit A(3)). Thus, the Court finds the $5,500 in total attorneys' fees, expenses, and costs claimed for Pryor, Ramirez & Amar, LLC reasonable.

### b. Attorney's Fees of Rebecca Ruegg

Moshir seeks $39,978.50 in attorney's fees, representing 216.1 hours at a rate of $185 per hour, on behalf of Attorney Rebecca Ruegg (Doc. 44, at 12). Lamborghini objects both to the entirety of Attorney Ruegg's claimed attorney's fees, and to several discrete portions of those fees.

Aside from the proportionality and limited success arguments discussed above, the crux of Lamborghini's objection to the entirety of the claimed fees is that they were not actually "incurred" within the meaning of the MMWA fee-shifting statute, 15 U.S.C. § 2310(d)(2). Lamborghini argues that because Attorney Ruegg is the salaried "in-house counsel" of a company where Moshir is both a co-owner and president, awarding any attorney's fees for Ruegg's work constitutes an inappropriate windfall for Moshir (Doc. 45, at 10-11).

To support its argument, Lamborghini first points to the ambiguous and incomplete description of Attorney Ruegg's professional relationship with Moshir contained in Moshir's Memorandum of Points and Authorities in Support of the Motion for Attorneys' Fees. Specifically, Attorney Ruegg's role as general counsel for CellTrust Corporation is disclosed, but plaintiff Moshir is described only as having previously worked with Ruegg at CellTrust because of his "role within CellTrust"—his ownership interest and presidency are not disclosed (Doc. 44, at 9; Doc. 44, Exhibit D, at 3). Lamborghini further avows that Attorney

Ruegg has informed Lamborghini that she has continued to receive her full salary as general counsel during the dispute despite attending Mr. Moshir's deposition, the mediation conference, and having numerous phone calls and email exchanges with Lamborghini during normal business hours on weekdays (Doc. 45, Exhibit A, at 2; *see* Doc. 47, at 6-7). Lamborghini also draws attention to the fact that Moshir has not yet paid Attorney Ruegg any attorney's fees for her claimed hours (*Id.*). Lastly, Lamborghini cites to Moshir's fee agreement with Attorney Ruegg as evidence that Ruegg will be paid only by the fee award and not by Moshir: "fees shall be payable upon resolution of this matter, . . . [i]f attorney's [sic] fees or costs are awarded in your favor in this agreement, you agree that all such equal to the amount incurred for the work I performed under this agreement will be received by me" (Doc. 40, Exhibit B(1)).

Attorney Ruegg characterizes her attorney-client relationship with Moshir as "separate representation of . . . an individual," regarding a "personal case," and the work involved as "in addition to and completely separate from [her] role as General Counsel for CellTrust Corporation" (Doc. 44, at 9). Attorney Ruegg further avows that she "works hours that include late evenings, weekends, early mornings, and holidays to ensure that she meets her obligations to CellTrust and any separate client she represents" and that CellTrust does not and has not compensated her for her representation of Moshir" (Doc. 47, at 6-7). Lastly, Attorney Ruegg explains that her fee agreement is a standard form she uses to collect fees "only upon resolution of matters" because she "does not maintain a trust account to hold client funds" during the pendency of a matter and that Moshir is contractually bound to pay the incurred fees regardless of a fee award (*Id.* at 7).

The record available to the Court does not provide enough conclusive evidence to justify denying Attorney Ruegg's claimed attorney fees on the basis that it would merely be a windfall for Moshir. Attorney Ruegg's sworn characterization of the representation as arms-length and requiring personal payment from Moshir for fees "incurred," regardless of the disposition of this Motion for Attorneys' Fees, is supported by the record before the Court (Doc. 47, Affidavit of Attorney Ruegg at ¶ 6(g)). Consequently, the Court will

examine the reasonableness of Attorney Ruegg's claimed hours and her rate to create a lodestar calculation.

### i.        Block-Billing by Attorney Ruegg

As a preliminary matter, the Court notes that many of Attorney Ruegg's time-and-task entries, such as the March 19 entry, are "block-billed" in that they contain multiple individual and unrelated tasks in violation of LRCiv 54.2(e)(1)(b). Block-billing is not inappropriate *per se* when the party seeking fees meets the basic requirements of "listing his hours and identifying the general subject matter of his time expenditures." *Fischer v. SJP–P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (internal quotations omitted); *see Hensley*, 461 U.S. at 433 (noting that although the fee applicant bears the burden of submitting "evidence supporting the hours worked and rates claimed," an applicant is "not required to record in great detail how each minute of his time was expended"). While not forbidden by case law, block-billing makes it nearly impossible for the Court to determine the reasonableness of the hours spent on each task. Where the Court cannot distinguish between the time claimed for the various tasks, the Court will reduce the award accordingly. LRCiv 54.2(e)(2); *see Chalmers*, 796 F.2d at 1210.

### ii.       Attorney Ruegg's Duplicative Efforts

Lamborghini objects to the reasonableness of Attorney Ruegg billing 26.7 hours of time for efforts previously accounted for in the time-and-task entries of Pryor, Ramirez & Amar, LLC, such as "reviewing emails, disclosures, and case documents, and researching the Arizona Lemon Law and MMWA," before Moshir chose to change counsel to Attorney Ruegg (Doc. 45, at 11-12). "In determining a reasonable number of hours, the Court must review detailed time records to determine whether the hours claimed by the applicant were unnecessary, duplicative or excessive." *Defenbaugh v. JBC & Assoc., Inc.*, No. 03–0651, 2004 WL 1874978 (N.D.Cal. Aug.10, 2004) (citing *Chalmers*, 796 F.2d at 1210).

Mr. Moshir originally hired Pryor, Ramirez & Amar, LLC to represent his interests in this litigation, however, Moshir fired attorney Ramirez and his firm on December 20, 2012 and Attorney Ruegg entered a Notice of Appearance on Jan. 11, 2012. Attorney Ruegg

defends her duplicative efforts as necessary because "when [Moshir] changed trial counsel, [Moshir's] case had not been fully briefed and discovery was just beginning" (Doc. 47, at 8). Moshir has not, however, provided any legal support to rebut the general rule that duplicative hours are not reasonable. *See Chalmers*, 796 F.2d at 1210; *Hensley,* 461 U.S. at 433-34. Instead, Moshir attempts to distinguish his case from those cited by Lamborghini in support of eliminating duplicative hours. *Milicevic v. Fletcher Jones Imports, Ltd.*, regardless of its different facts and circumstances, supports the proposition that duplicative efforts are unreasonable and may be eliminated from a fee award in an MMWA case. 402 F.3d 912, 919-20 (9th Cir. 2005).

A litigant has the right to counsel of his choice in many circumstances, including this case. Moshir, however, has presented no legal authority—and the Court has found none—that would require Lamborghini to pay for the hours Attorney Ruegg expended to become "caught-up" after a change of counsel entirely within Moshir's discretion. Even if the MMWA was to be interpreted to require Lamborghini to subsidize Moshir's change of counsel, the Court will not penalize Lamborghini for Moshir's choice to replace expert MMWA counsel, Pryor, Ramirez & Amar, LLC, with Attorney Ruegg who was, in her own sworn words, an inexperienced litigator and lacking the necessary competence in the MMWA at the beginning of her representation (Doc. 47, at 8-9). In sum, the Court finds the hours expended by Attorney Ruegg to "catch-up" in this MMWA case unreasonably duplicative.

The Court notes that Lamborghini has claimed that 26.7 of Attorney Ruegg's hours were spent catching up, but Lamborghini has not specifically identified which dates or time-and-task entries total to this number. During its review, however, the Court has found that every entry prior to Jan. 31, except for two 0.5 hour entries on Jan. 10 and Jan. 17, indicate "catch-up" work and total to 25.5 hours. Additionally, a Feb. 8 entry for 1.2 hours describes "catch-up" work ("[e]mails w[ith] prior counsel L. Ramirez re[garding] evidence [and] review of same") (Doc. 44, Exhibit C(1), at 2-3). In sum, these entries total 26.7 hours, which matches the amount of time claimed by Lamborghini to be unreasonably duplicative. The

Court therefore finds the 26.7 hours described above to be unreasonably duplicative and will reduce the reasonable hours component of the lodestar calculation accordingly.

### iii.  Unopposed Extensions of Moshir's Expert Disclosure Deadlines

Lamborghini objects to the reasonableness of Attorney Ruegg billing 10 hours[2] of time to prepare and file two unopposed extensions of Moshir's expert disclosure deadline (Doc. 45, at 15). Moshir argues that these time extensions were reasonable because Moshir had unique difficulty in finding an expert capable and willing to testify against Lamborghini (Doc. 47, at 10). Even if Moshir's claim of unique difficulty in finding an expert were true, the Court sees no unusual difficulty in drafting and filing two short, stipulated motions for an extension of time when neither motion included nor required a substantial recitation of facts or law (Doc. 24; Doc. 27). Moshir has provided no justification as to why Attorney Ruegg billed 11.6 hours[3] to prepare, file, and review these two simple motions. In the Court's experience, each motion should have required, at most, half of an hour (0.5) to complete. Therefore, the Court finds only one (1.0) hour to be reasonable, the remaining 10.6 hours to be unreasonable, and will reduce the reasonable hours component of the lodestar calculation accordingly.

### iv.  Motion to Correct Rule 60(a) Scheduling Order

Lamborghini objects to the reasonableness of Attorney Ruegg billing 6.2 hours of time to prepare and file an unopposed motion to correct the Court's Rule 16 Scheduling Order (Doc. 45, at 15). In the original order, the Court mistakenly stated a June 29, 2012 discovery deadline as June 29, *2011*, a date that predated the November 28, 2011 order, itself (Doc. 12). Despite the obviousness of the error, Moshir filed a formal motion and a proposed order on

---

[2] Lamborghini has not specifically identified which dates or time-and-task entries total this number.

[3] During its review, the Court identified eight (8) time-and-task entries related to the two motions: Feb. 23 for 1.0 and 3.3 hours; Feb. 24 for 0.2 and 1.2 hours; Feb. 27 for 0.7 hours; March 19 for 3.1 hours; March 20 for 1.7 hours; and March 22 for 0.4 hours.

Feb. 2, 2012 (Doc. 19), for which Attorney Ruegg billed 3.9 hours[4] to research, prepare, review, and file. Moshir attempts to defend the indefensible by claiming that this time was "necessary to have a clear and correct record" and "to avoid relying upon assumption" of the correct 2012 deadline. The Court finds these 3.9 hours to be unreasonable and will reduce the reasonable hours component of the lodestar calculation accordingly.

### v. Legal Fees and Costs Associated with Mediation

Lamborghini objects to Attorney Ruegg billing 51.4 hours and $1,757.50 in total mediation fees to prepare for and attend a mediation, claiming that the MMWA does not authorize such fees, the amount of fees claimed is unreasonable, and Moshir should bear his own fees because his unreasonable settlement positions are to blame for the failure of the mediation process.

First, Lamborghini contends that Moshir "offers no relevant legal authority for an award of fees for mediation preparation and attendance" (Doc. 45, at 13). Moshir, however, relies on the plain-language of the MMWA's fee-shifting provision which allows recovery of "a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been *reasonably* incurred by the plaintiff for or in connection with the commencement and prosecution of such action." 15 U.S.C. § 2310(d)(2) (emphasis added). Lamborghini argues that "the commencement and prosecution" of an action includes only litigation and not mediation. To support its argument, Lamborghini cites to *Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 530 (5th Cir. 2001) for the proposition that "[m]ediation costs do not fall within the limited category of expenses taxable under Title VII." Aside from not being binding precedent on the Court, Lamborghini's analogy fails because § 2310(d)(2) allows for the "aggregate amount of costs and expenses," a much broader fee award than the limited language of 42 U.S.C. § 2000e-5(k), which only allows "a reasonable attorney's fee (including expert fees) as part of the

---

[4] During its review, the Court identified two (2) time-and-task entries related to the motion: Feb. 1 for 3.2 hours; and Feb. 2 for 0.7 hours.

costs."

Unconvinced by Lamborghini's argument and believing that mediation can be connected to the "commencement and prosecution" of an MMWA claim, the Court reads the plain language of § 2310(d)(2) to allow mediation fees and costs if, and only if, the Court determines that the mediation fees and costs were *reasonably* incurred in an effort to resolve the litigation (*e.g.* "for or in connection with the commencement and prosecution of such action"). Consequently, the Court will examine the reasonableness of Moshir's claimed hours and fees for mediation with an eye towards their connection to resolving Moshir's claim.

Second and third, Lamborghini contends that the amount of fees claimed is unreasonable and Moshir should bear his own fees because his unreasonable settlement positions are to blame for the failure of the mediation process. These two closely related contentions encapsulate the argument that Attorney Ruegg's time, billed as related to mediation, was not reasonably utilized to advance the resolution of Moshir's claim, and therefore is not recoverable under § 2310(d)(2). As quoted above, when deciding the reasonable number of hours expended, a court may consider: "(1) the novelty and complexity of the issues[;] (2) the special skill and experience of counsel[;] (3) the quality of representation[;] and (4) the results obtained." *Cabrales*, 864 F.2d at 1464.

For the first factor, the Court notes that Moshir's complaint involved a rather simple and straightforward MMWA claim turning on just a few issues of fact. Despite this, Attorney Ruegg claims she required 27.9 hours[5] to prepare Moshir's mediation statement. For the second factor, Attorney Ruegg, herself, argues that she possessed no special skills and such inexperience that she deemed herself to be incompetent without co-counsel (Doc. 47, at 8-9). For the third factor, there is no direct evidence in the record before the Court of the quality of Attorney Ruegg's representation during the mediation preparation and process.

For the fourth and final factor, the results of the mediation reveal the true nature of

---

[5] During its review, the Court identified four (4) time-and-task entries related to preparation of the mediation statement: May 7 for 7.3 hours; May 8 for 6.3 hours; May 9 for 7.5 hours; and May 10 for 6.8 hours.

Moshir's position weighs against the reasonableness of his claim for fees. Despite having recently received and disclosed to Lamborghini his expert's report—a report that did not pinpoint a mechanical defect or quantify in dollars any diminution of value (Doc. 45, Exhibit B, Diminution of Value / Inspection Report, at 88-93)—Moshir demanded $135,000 dollars in damages to settle (Doc. 45, Exhibit A, Affidavit of Michael B. Brewer, at 2). Moshir's demand appears particularly unreasonable because it was $50,000 more than the $85,000 he had been demanding since the beginning of the dispute and before receiving an expert's report that did not significantly advance his claims. Moreover, at the May 17, 2012 mediation, Moshir rejected Lamborghini's offer to settle for $35,000.[6] Yet, one month later, after 35.0 more hours[7] of time claimed by Attorney Ruegg and apparently without any significant new evidence, Moshir accepted Lamborghini's offer of judgment for $35,000 in damages. In his Motion for Attorneys' Fees and Reply, Moshir offers no explanation for his change of heart or rationale as to how the Court can interpret his mediation tactics as something other than a ploy to needlessly prolong the litigation and increase Attorney Ruegg's fees.

Thus, the Court finds that the mediation was not reasonably in furtherance of resolving the dispute. Therefore MMWA § 2310(d)(2) does not provide for recovery of the attorney's fees, costs, and expenses related to the failed mediation and Moshir should bear his own costs for its failure. The Court has counted a total of 48.3 hours related to mediation:

---

[6] It is unclear if Lamborghini's $35,000 settlement offer at mediation explicitly provided for additional recovery of reasonable attorneys' fees, costs, and expenses. Moshir claims that it did not, but has not alleged that accepting Lamborghini's mediation offer would have required waiver of Moshir's implicit right to claim recovery of reasonable attorneys' fees, costs, and expenses under § 2310(d)(2) (Doc. 47, at 3).

[7] Attorney Ruegg's time-and-task entries from the day after mediation (May 18) to the filing of acceptance of Lamborghini's offer of judgment (June 20), inclusive, total 35.0 hours.

27.9 hours[8] to prepare the mediation statement and another 20.4 hours[9] for preparation and attendance. Additionally, the Court finds that because Moshir could have settled at the May 17 mediation on effectively identical terms as Lamborghini's soon-after accepted Offer of Judgment, the 35.0 hours[10] of legal work provided between the failed mediation and filing the acceptance of the Offer of Judgment was an unreasonable and needless furtherance of the failed mediation process, except for 2.0 hours that the Court, in its experience, has found reasonable to prepare and file a Notice of Acceptance of an Offer of Judgment. In sum, the Court finds these 81.3 hours[11] and the $1,757.50 in total mediation fees to be unreasonable and will reduce the costs and expenses awarded and the reasonable hours component of the lodestar calculation accordingly.

### vi.   Legal Fees and Costs Associated with Moshir's Motion for Attorneys' Fees, Costs, and Expenses

In addition to recovery for legal work during the pendency of this dispute, Moshir's Motion for Attorney's Fees seeks to recover a total of 32.4 hours[12] of Attorney Ruegg's time related to the preparation and filing of the Motion for Attorneys' Fees and Reply. After accounting for 9.8 hours[13] of time-and-task entries already found unreasonable, the Court

---

[8] *See* n.5, *supra*.

[9] During its review, the Court identified thirteen (13) time-and-task entries related to the failed mediation, but not to the mediation statement: March 7 for 0.2 hours; March 11 for 0.2 hours; March 15 for 0.4 and 0.2 hours; March 16 for 0.5 hours; March 22 for 2.7 hours; March 27 for 2.2 hours; April 17 for 0.7 hours; April 18 for 0.3 hours; April 25 for 0.7 hours; May 4 for 0.1 hours; May 11 for 2.8 hours; and May 17 for 9.4 hours.

[10] *See* n.7, *supra*.

[11] 48.3 hours + 35.0 hours - 2.0 hours = 81.3 hours.

[12] Attorney Ruegg claims 27.4 hours to prepare and file the initial motion and an additional 5.0 hours to prepare and file the reply (Doc. 44, pp. 5, 8; *see* Doc. 47, p.11).

[13] Specifically, two block-billed entries related to the acceptance of Lamborghini's Offer of Judgment: June 19 for 8.7 hours; and June 20 for 1.1 hours. Apparently, Attorney Ruegg had calculated the entirety of these 9.8 hours as related to the Motion for Attorneys' Fees.

calculates a total of 22.6 hours claimed by Attorney Ruegg related to Moshir's motion for attorneys' fees.

In the District of Arizona, motions for attorneys' fees and costs are governed by Local Rule of Civil Procedure 54.2.[14] A motion for attorneys' fees and expenses must "cite the applicable statutory or contractual authority upon which the movant seeks an award of attorneys' fees and related non-taxable expenses." LRCiv 54.2(c)(1). "If the moving party claims entitlement to fees for preparing the motion and memorandum for award of attorneys' fees and related non-taxable expenses, such party also must cite the applicable legal authority supporting such specific request." LRCiv 54.2(c)(2). A motion must also discuss the reasonableness of the requested award, using the factors provided in the Local Rule, such as the time required, novelty of the questions presented, and the customary fee charged. LRCiv 54.2(c)(3).

While Moshir has complied with LRCiv 54.2(c)(1) and (3), he has failed to specifically cite any applicable legal authority supporting his claim of entitlement to fees for preparing the motion and memorandum for award of attorneys' fees, as required by LRCiv 54.2(c)(2). Specifically, Moshir has made no argument that Attorney Ruegg's preparation of the Motion for Attorneys' Fees was reasonably incurred "for or in connection with the commencement and prosecution of" Moshir's MMWA claim. *See*, § 2310(d)(2). Accordingly, Moshir has not shown that he is entitled to recovery for the 22.6 hours of attorney time spent in preparing his motion for fees and costs. The court will reduce the reasonable hours component of the lodestar calculation accordingly.

---

[14] The district courts are free to adopt local rules regarding the filing of motions for attorneys' fees and expenses. *See Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004) (citing *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 453–54 (1982)); *see also Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010) (quoting *United States v. Warren*, 601 F.2d 471, 474 (9th Cir.1979) ("[o]nly in rare cases will we question the exercise of discretion in connection with the application of local rules").

### vii.   Other Unreasonable Hours Claimed by Attorney Ruegg

During its review of Attorney Ruegg's remaining hours for reasonableness, the Court has identified numerous other unreasonable time-and-task entries.

Attorney Ruegg has claimed 2.0 hours[15] were necessary to re-mail Moshir's Second Supplemental Disclosure statement and file notice with the Court because PACER had an incorrect address listed for Lamborghini. In the Court's experience, the correction of such a minor clerical mistake should reasonably require no more than 0.2 hours, thereby rendering 1.8 hours unreasonable.

Attorney Ruegg has claimed 0.8 hours[16] to "[e]mail reminder to [Moshir] regarding transcript review; discussion re[garding] paid transcript fee" (Doc. 44, Exhibit C(1), at 3). In the Court's experience, emailing a reminder to a client and noting that a fee will be required to procure transcripts should reasonably require no more than 0.1 hours, thereby rendering 0.7 hours unreasonable.

Attorney Ruegg has claimed 5.8 hours[17] for three time-and-task entries regarding Attorney Brian Foster that, for the reasons discussed below, were unreasonable because they were either unnecessary or merely mentoring of Attorney Ruegg.

In sum, the Court finds an additional 8.3 hours to be unreasonable and will reduce the reasonable hours component of the lodestar calculation accordingly.

### viii.   The Reasonableness of Attorney Ruegg's Hourly Rate

Lamborghini has not objected to the reasonableness of Attorney Ruegg's $185 hourly rate and Attorney Ruegg has complied with LRCiv 54.2(d)(4)(B) (requiring, "as appropriate," a discussion of "the comparable prevailing rate") (Doc. 44, Exhibit D, at 4-5). Accordingly, the Court finds Attorney Ruegg's rate of $185 per hour reasonable and will use

---

[15] April 10 for 1.2 hours; and April 12 for 0.8 hours.

[16] March 7 for 0.8 hours.

[17] March 15 for 1.8 hours; March 16 for 0.2 hours; May 7 for 3.8 hours.

this rate in its lodestar calculation.

### ix.    Lodestar Calculation of Attorney Ruegg's Reasonable Fees

For the efforts of Attorney Ruegg, Moshir's motion for attorneys' fees seeks recovery of 216.1 total hours of time at the rate of $185 per hour. As detailed above, the Court has found a total of 153.4[18] of those hours to be unreasonable. Accordingly, the Court finds Moshir entitled to recover the remaining 62.7 hours at the rate of $185 per hour. These sums yield a final lodestar calculation of $11,599.50. Because there is a "strong presumption" that the lodestar is the reasonable fee, *Pennsylvania*, 478 U.S. at 565, the Court finds $11,599.50 in total attorney's fees, expenses, and costs claimed for Attorney Ruegg to be reasonable.

### c.    Attorney's Fees of Brian Foster

Moshir seeks $2,880.00 in attorney's fees, representing 6.4 hours worked, on behalf of Attorney Brian Foster. Moshir claims that Foster "was retained to offer advice and guidance to Attorney Ruegg . . . [,] answer[] questions[,] and offer[] insight to ensure the case properly proceeded" (Doc. 40, Affidavit of Attorney Rebecca Ruegg, at 4), and that he "was utilized for 6.4 hours advising and consulting with Attorney Ruegg" (Doc. 44, at 9). Many of Attorney Foster's time-and-task entries, such as multiple phone conferences regarding tactics and "send[ing] sample requests for production and non-uniform interrogatories to R. Ruegg" (Doc. 40, Exhibit B(1)), are more accurately described as "mentoring" for Attorney Ruegg than legal services reasonably incurred by Moshir in furtherance of his claim. The remaining time-and-task entries, such as "review[ing] [the] complaint and amended complaint" (an activity the Court notes was already performed by *three* other lawyers), numerous reviews of various correspondence, and "review[ing] [Lamborghini's] mediation memorandum" (*id.*), are, at best, unnecessarily duplicative of the services performed by attorneys Ramirez, Amar, and Ruegg.

Moshir defends Attorney Foster's participation by claiming that because Attorney

---

[18] From subsections II.C.2.b.ii-vii, respectively: 26.7 hours + 10.6 hours + 3.9 hours + 81.3 hours + 22.6 hours +8.3 hours = 153.4 total hours.

Ruegg lacked civil litigation experience, hiring experienced co-counsel "was necessary in this action to comport with Arizona Rules of Professional Conduct Rule ER 1.1" (Doc. 47, at 8). The Court does not find Moshir's argument persuasive because Moshir did not enter into a formal fee agreement with Attorney Foster until March 16, 2012 (Doc. 40, Exhibit B(2)), more than two months after Attorney Ruegg began her representation.[19] Additionally, Attorney Ruegg's time-and-task entries do not mention Attorney Foster until February 23, 2012, and do not discuss engaging his services until February 24 and March 15, 2012 (Doc. 44, Exhibit C(1), at 2-4). Thus, despite her apparent insistence to the contrary, the Court will presume that Attorney Ruegg would not have intentionally violated ER 1.1 by representing Moshir until March 16 without necessary experienced-assistance if she had actually believed that she was incompetent.

Lastly, Moshir defends his claim that Attorney Foster's fees were reasonable by arguing that by primarily utilizing Attorney Ruegg (at an allegedly reduced billing rate) and only supplementing her efforts with Attorney Foster's greater experience when necessary, total legal fees would be less than "if Attorney Foster had been utilized as sole counsel" (Doc. 47, at 9). The Court finds this conclusion inconsistent with the fees claimed in this case. The Court notes that Attorneys Ramirez and Amar, specialists in the MMWA, required only 20.7 hours combined to complete a majority of the work in this case that was reasonably necessary for pursuing and resolving Moshir's claim. Moshir has produced no evidence or support that an attorney more experienced than Ruegg, such as Foster, would have required even one-quarter of the 183.7 hours Attorney Ruegg claims were required to finish resolving Moshir's MMWA claim.

Lamborghini cannot be reasonably expected to pay for unnecessarily duplicative legal

---

[19] The Court notes that Attorney Foster's time-and-task ledger includes three entries, totaling 1.3 hours, prior to March 14, 2012 (the day Attorney Foster prepared a Notice of Appearance). These entries were either duplicative (reviewing previously prepared and filed materials, mentoring (phone conference with R. Ruegg regarding case tactics), or so inadequately described as prevent evaluation for reasonableness ("work on claims and discovery needed to prevail on claims"). *See* LRCiv 54.2(d)(2).

1    work. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1113 (9th Cir. 2008). Thus, the

2    Court finds that Attorney Foster expended zero reasonable hours, that examining the

3    reasonableness of Attorney Foster's rate is moot, and that the lodestar calculation results in

4    a reasonable fee of $0.00.

### 3.    Non-Testifying Expert Fees

6    Lamborghini objects to $4,647.90 in expert witnesses fees charged by Moshir's expert

7    as being outside of the scope of the applicable MMWA fee-shifting provision, 15 U.S.C.

8    § 2310(d)(2): "cost[s] and expenses" are recoverable if "determined by the court to have been

9    reasonably incurred by the plaintiff for or in connection with the commencement and

10   prosecution" of the action. Moshir relies on the plain language of § 2310(d)(2) to argue that

11   his expert fees are a "cost or expense" that was "reasonably incurred . . . in connection with

12   the . . . prosecution" of the action. On this issue, apparently of first impression within the

13   Ninth Circuit, the Court agrees with Moshir.

14   Lamborghini has offered no legal authority contradicting Moshir's plain-meaning

15   interpretation of § 2310(d)(2).[20] The Court, in its research, has found no binding or

16   conclusive authority supporting either party. Because of this, the Court must rely on its

17   interpretation of the plain-language of the statute. Here, Moshir had "retained [his] expert[]

18   in anticipation of trial" (Doc. 47, at 11) and to evaluate Moshir's vehicle for defects,

19   calculate a diminution of value, and prepare an expert report. Hiring an expert for these

20   reasons is certainly a reasonable pre-trial step in a MMWA action involving an allegedly

21   defective high-performance sports car where the defendant claims that no defect exists. Thus,

22   the Court finds that, within the plain-language of § 2310(d)(2), this expert witness fee can

23   be considered to have been "reasonably incurred" by Moshir "in connection with the . . .

24   prosecution" of this action. The Court also notes that Lamborghini has not objected to the

---

26   [20] Instead, Lamborghini only highlights the lack of analogy and binding precedence

27   of Moshir's citation to *Holmes v. LG Marin Corp.*, 521 S.E.2d 528 (Va. 1999), and attacks
     the impact on the merits that Moshir's expert may have had if the case proceeded to trial.

28   Neither reason, however, changes the plain meaning of the statute.

reasonableness of the dollar amount of the expert witness fee. Accordingly, the Court finds the $4,647.90 in expert witness fees reasonable and will include them in its final award.

### 4. Transcript Fee

Included in Moshir's Motion for Attorneys' Fees is a claim for the recovery of $284.00 in deposition transcription expenses. Although Moshir has not clarified their use or reasonable necessity, Lamborghini has not objected to their reasonableness. Accordingly, the Court finds the $284.00 in expenses reasonable and will include them in its final award.

### 5. Total Calculation of Award Amount

Attorneys' Fees, Costs, and Expenses:

Pryor, Ramirez & Amar: $5,500 (includes complaint filing and service fees)

Rebecca Ruegg: $11,599.50

Brian Foster: $0.00

Mediation Fees: $0.00

Expert Witness Fees: $4,647.90

Deposition Transcript Fee: $284.00

Total: $22,031.40

## III.   CONCLUSION

Accordingly,

**IT IS ORDERED** granting Moshir's Motion to Strike Lamborghini's Amended Response to Moshir's Motion for Attorneys' Fees (Doc. 46). Doc. 46 is stricken.

**IT IS FURTHER ORDERED** overruling Moshir's evidentiary objections in Moshir's Reply to Lamborghini's Response (Doc. 47).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

- 23 -

**IT IS FURTHER ORDERED** granting in part and denying in part Moshir's Motion for Attorneys' Fees, Costs, and Expenses (Doc. 40), and awarding Moshir a total of $22,031.40 in attorneys' fees, costs, and expenses, as described above.

DATED this 26th day of February, 2013.

James A. Teilborg
Senior United States District Judge